**Mark D. TOURSCHER, Appellant,**

v.

**John McCULLOUGH; Kathy Emil; Commissioner Horn; Jay Whitesel, (D.C. Civil No. 97–cv–00223J).**

**Mark D. Tourscher, Appellant,**

v.

**Martin Horn, Secretary of the Pa. Dept. of Corrections; John McCullough, Superintendent, (D.C. Civil No. 98–cv–00176J).**

**Nos. 97–3671, 98–3499.**

United States Court of Appeals, Third Circuit.

Argued April 5, 1999.

Filed July 12, 1999.

Stanley B. Edelstein (argued) Jacoby Donner, P.C. Philadelphia, PA, for Appellant.

Calvin R. Koons (argued), Senior Deputy Attorney General, D. Michael Fisher, Attorney General, John G. Knorr, III, Chief Deputy Attorney General, Office of Attorney General, Appellate Litigation Section, Harrisburg, PA, for Appellees.

Before: SLOVITER and ALITO, Circuit Judges, and ALARCON, Senior Circuit Judge*

## OPINION OF THE COURT

ALARCON, Senior Circuit Judge:

Mark D. Tourscher ("Tourscher") appeals from the district court's order of November 25, 1997 dismissing his pro se complaint ("first complaint") as frivolous under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. He also appeals from the August 31, 1998 order dismissing a second pro se complaint ("second complaint"). This court consolidated the two appeals.

In his first complaint, Tourscher alleged that he was deprived of rights by Pennsylvania Department of Corrections officials ("Prison Officials") that are guaranteed under the Eighth, Thirteenth and Fourteenth Amendments because they compelled him to work in the prison cafeteria while he was a pretrial detainee. In his second complaint, he asserted that the Prison Officials deprived him of meaningful access to the courts in violation of the Due Process Clause by compelling him to work in the prison cafeteria while he was preparing his appeal from his second state conviction. In addition, Tourscher maintained in each complaint that he is entitled to be compensated pursuant to the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a), for the work he was compelled to do in the prison cafeteria.

We conclude, that Tourscher was a duly convicted prisoner who could be compelled to work in the prison cafeteria until the date the Court of Common Pleas regained jurisdiction following the Pennsylvania Supreme Court's denial of the Commonwealth's petition for allowance of appeal. Accordingly, we affirm in part the dismissal of the first complaint. We vacate the dismissal of that portion of the first complaint that alleges he was compelled to work in violation of the Thirteenth Amendment between September 4, 1997 and September 18, 1997, and remand with instructions. We also hold that the district court did not err in dismissing the second complaint because Tourscher has failed to show that the work he was required to perform after his second conviction denied him meaningful access to the courts. Additionally, we reject Tourscher's contention that pretrial detainees and convicted prisoners are covered by the FLSA minimum wage section for services performed in intra-prison work.

I

In 1995, Tourscher was convicted of burglary, criminal trespass, recklessly endangering another person, simple assault, and terroristic threats in the Court of Common Pleas of Lackawana County, Pennsylvania. He was sentenced to serve three and one-half years to twenty-two years. While his appeal from his first conviction was pending, the Prison Officials ordered Tourscher

---

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

to work in the prison cafeteria or face administrative misconduct charges.

On August 23, 1996, the Pennsylvania Superior Court vacated his first conviction and remanded the case for a new trial. *See Commonwealth v. Tourscher*, 453 Pa.Super. 1, 682 A.2d 1275 (Pa.Super.Ct.1996).

The Commonwealth filed a motion for reargument in the Pennsylvania Superior Court. The Commonwealth's motion was denied on October 21, 1996. The Commonwealth then filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court on November 21, 1996. While the petition for allowance of appeal was pending, the Court of Common Pleas set bail for Tourscher at $25,000 on December 6, 1996. Tourscher remained in custody, however, because he was unable to post bail.

The Pennsylvania Supreme Court denied the petition for allowance of appeal on August 21, 1997. Tourscher was not excused from his work assignment in the prison cafeteria until September 18, 1997.

Tourscher filed his first complaint pursuant to 42 U.S.C. § 1983 on July 27, 1997. He alleged that the Prison Officials, in both their individual and official capacities, violated his right not to be compelled to work under the Eighth, Thirteenth, and Fourteenth Amendments. Tourscher also alleged that he should be paid the minimum wage for his labor pursuant to the FLSA, 29 U.S.C. §§ 201–209. Tourscher prayed for compensatory damages, punitive damages, and declaratory relief. He did not request injunctive relief.

Tourscher alleged that "the defendants have been forcing the Plaintiff to involuntary servitude, and threatening to lock him up in the hole if he did not contie [sic] to labor for the state." In documents filed with the district court, Tourscher asserted that he was required to work in the prison cafeteria, at a wage of 22 cents per hour. He further stated that he was paid approximately $15 per month. At a wage of 22 cents per hour, Tourscher worked approximately 69 hours per month or less than 17 hours per week. (22 cents × 69 hours = $15.18.)

In his report dated November 5, 1997, the magistrate judge recommended that the district court consider either dismissing the complaint for failing to state facts showing a federal constitutional violation, or on the basis that the Prison Officials are immune because the law regarding whether a pretrial detainee can be compelled to work in a prison cafeteria was "not so clearly established that defendants could be considered to know that their conduct is unlawful." On November 25, 1997, the district court adopted the report and recommendation of the magistrate judge as its opinion and dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), without indicating whether it believed Tourscher had failed to state a claim, or that the Prison Officials were immune.

Following the denial of the Commonwealth's petition for allowance of appeal, Tourscher was retried for the same offenses. On March 13, 1998, he was found guilty of criminal trespass and sentenced to eleven and one-half months to ten years.

Tourscher filed his second complaint against the Prison Officials on July 27, 1998. In the second complaint, Tourscher alleged that the Prison Officials had deprived him of his rights under the Eighth, Thirteenth, and Fourteenth Amendments. His complaint also alleged, inter alia, that the requirement that he perform intraprison work assignments interfered with his ability to prepare the appeal from his second criminal conviction. He also claimed that he was entitled to be paid minimum wages under the FLSA for the work he performed in the prison cafeteria. Tourscher prayed for compensatory damages, punitive damages, declaratory relief, and injunctive relief in his second complaint. Tourscher failed to allege the number of hours he was required to work during the pendency of his March 13, 1998 state court conviction and his in forma

240

pauperis application did not set forth his monthly income.

The second complaint was also referred to a magistrate judge for a report and recommendation. The magistrate judge issued a recommendation that the complaint be dismissed for "failure to state a claim," pursuant to 28 U.S.C. § 1915(e)(2)(B), "rely[ing] on the Report and Recommendation" filed regarding the disposition of the first complaint. The district court adopted the magistrate judge's report and recommendation as its opinion and dismissed the action on August 31, 1998.

▪ We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291. Our review of the dismissal of each action is plenary. *See Gibbs v. Roman,* 116 F.3d 83, 85 (3d Cir.1997); *see also Jenkins v. Morton,* 148 F.3d 257, 258 (3d Cir.1998). "[W]e must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). We may affirm the district court on any ground supported by the record. *See Central Penn. Teamsters Fund v. McCormick Dray Line, Inc.,* 85 F.3d 1098, 1107 (3d Cir.1996); *see also Erickson v. United States,* 976 F.2d 1299, 1300–01 (9th Cir.1992) (affirming district court's judgment on the basis of qualified immunity without deciding whether plaintiff had established a constitutional violation, where district court had reached constitutional issue).

## II

▪ Tourscher asserts that it is a violation of the Thirteenth Amendment's prohibition against involuntary servitude to require a party not duly convicted of a crime to work in a prison cafeteria.[1] This court has not previously considered the question whether the Thirteenth Amendment precludes prison authorities from compelling a prisoner to work during the pendency of his or her appeal from a conviction. Other circuits, however, have held that a person sentenced to serve a term of imprisonment can be required to work during the time his or her appeal is pending before a reviewing court. *See Stiltner v. Rhay,* 322 F.2d 314, 315 (9th Cir.1963) ("There is no federally protected right of a state prisoner not to work while imprisoned after conviction, even though that conviction is being appealed."). *See also Plaisance v. Phelps,* 845 F.2d 107, 108 (5th Cir.1988) ("The fact that appellant is appealing does not require the district court to assume that his conviction was other than duly obtained."); *Omasta v. Wainwright,* 696 F.2d 1304, 1305 (11th Cir.1983) (holding that "where a prisoner is incarcerated pursuant to a presumptively valid judgment ... the thirteenth amendment's prohibition against involuntary servitude is not implicated .... even though the conviction may be subsequently reversed."). We agree with our sister circuits that a duly convicted prisoner continues in that status until his or her appeal becomes final even if it results in a reversal of the conviction.

▪ Tourscher contends that he ceased being a duly convicted prisoner after the Pennsylvania Superior Court reversed his original conviction on August 23, 1996. He maintains that he reverted to the status of a pretrial detainee on that date and could not be compelled to work during the pendency of the Commonwealth's attempts to overturn the Pennsylvania Superior Court's decision. To support this contention, Tourscher points out that on December 5, 1996, the Court of Common Pleas granted his motion to post bail pending his retrial. The Prison Officials maintain that the judgment of the Pennsylvania Superior Court did not become effective until the

1. Section 1 of the Thirteenth Amendment provides as follows:
   Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Pennsylvania Supreme Court's denial of the Commonwealth's petition for allowance of appeal became final on September 4, 1997. To resolve this dispute, we must decide when the judgment of the Pennsylvania Superior Court reversing Tourscher's original conviction became effective and restored Tourscher to the status of a pretrial detainee.

■ The parties have not cited any authority to us that defines "duly convicted," as that term is used in the Thirteenth Amendment. We are persuaded that, in determining whether a person incarcerated under state law is a "duly convicted" prisoner, we must examine the state's laws regarding the effective date of the judgments of its courts. Under Rule 1736(b) of the Pennsylvania Rules of Appellate Procedure, the taking of an appeal acts as an automatic supersedeas.[2] In *Elizabeth Forward School District v. Pennsylvania Labor Relations Board*, 149 Pa.Cmwlth. 235, 613 A.2d 68 (1992), the court noted that the term "appeal," as used in Rule 1736(b), includes petitions "under any other provision of law." 149 Pa.Cmwlth. at 240, 613 A.2d at 70. The court held in *Elizabeth* that a petition for the allowance of an appeal filed by the Commonwealth acted as an automatic supersedeas.[3] *See id.* A later case, relying on *Elizabeth*, reached the same result. *See Public Advocate v. Philadelphia Gas Commission*, 166 Pa. Cmwlth. 41, 45, 646 A.2d 19, 21 (1994). Although, as Tourscher argues, *Elizabeth* and *Public Advocate* concern civil matters,

Rule 1764 of the Pennsylvania Rules of Appellate Procedure provides that Rule 1736(b) applies to criminal matters not involving capital punishment.[4] Thus, under Pennsylvania law, the filing of a petition for allowance of appeal by the Commonwealth stayed the effective date of the judgment of the Pennsylvania Superior Court. The Commonwealth's petition for allowance of appeal was not acted upon by the Pennsylvania Supreme Court until August 21, 1997. Pursuant to Rule 2572(b)(2) of the Pennsylvania Rules of Appellate Procedure, "the time for the remand of Record" from an order of the Pennsylvania Supreme Court is 14 days. Under this rule the record should have been remanded on or before September 4, 1997. Accordingly, on that date he reverted to the status of a pretrial detainee.

Tourscher, in his opening brief, "concedes that the Commonwealth's attempt to appeal the Superior Court's order may have kept that order from becoming final." Appellant's Opening Brief at 18. He argues, however, that "technical notions of finality must bow to the United States Constitution...." *Id.* Tourscher fails, however, to cite any authority to support the · proposition that the Thirteenth Amendment requires us to hold that the decision of an intermediate court reversing a conviction takes immediate effect, notwithstanding the fact that the judgment is not final under state law until its highest court has acted upon a prosecutor's petition for review of an intermediate court's

---

**2.** Rule 1736(b) reads in relevant part:

Supersedeas automatic. Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) [including the Commonwealth or any officer thereof, acting in his official capacity] of this rule shall operate as a supersedeas in favor of such party.

**3.** Although not defined in the Pennsylvania Rules, the term "supersedeas" is defined as follows in Black's Law Dictionary: "In modern times the term is often used synonymously with a 'stay of proceedings,' and is employed to designate the effect of an act or proceeding which of itself suspends the en-

forcement of a judgment." Black's Law Dictionary 1437 –38 (6th ed.1990).

**4.** The full text of Rule 1764 reads:

Other Stays in Criminal Matters
Except as otherwise prescribed by the Pennsylvania Rules of Criminal Procedure, Rule 1731 (automatic supersedeas of orders for the payment of money) et seq. shall be applicable to criminal or quasi-criminal matters or orders relating thereto which are not within the scope of Rule 1761 (capital cases) through Rule 1763 (vacation of supersedeas on affirmance of conviction). Pa. R.A.P. 1764.

adverse judgment. Tourscher was a duly convicted prisoner until the automatic stay of the Pennsylvania Superior Court's judgment expired on September 4, 1977. The requirement that he work in the prison cafeteria prior to September 4, 1997 did not violate the Thirteenth Amendment.

## III

■ It appears that Tourscher's status was equivalent to that of a pretrial detainee in the period between September 4, 1997 and September 18, 1997. This does not necessarily mean that Tourscher could not be compelled to perform some service in the prison. In *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993), and *Bijeol v. Nelson,* 579 F.2d 423 (7th Cir.1978) (per curiam), the courts held that pretrial detainees may be required to perform "general housekeeping responsibilities" consistently with the Due Process Clause.

Because the District Court dismissed Tourscher's complaint before filing and service, the nature of the services that Tourscher was required to perform during that period and the amount of time they took is not on record. Such information is necessary before a court can determine whether the prison officials deprived him of this Thirteenth Amendment right to be free from involuntary servitude or his rights under the Due Process Clause. Indeed, the defendants have not even had the opportunity to file an answer.

Therefore, we must vacate the dismissal of that portion of the complaint that alleges that Tourscher was compelled to work between September 4, 1997 and September 18, 1997. We will remand with instructions that the District Court direct that Tourscher's complaint be filed and let the case proceed thereafter.

## IV

■ In his second complaint, Tourscher alleged that the Prison Officials deprived him of his right to meaningful access to the Pennsylvania courts by compelling him to work in the prison cafeteria while his appeal from his second conviction was pending in state court. In *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Court held that the Due Process Clause prohibits prison officials from denying a prisoner meaningful access to the courts. *See id.* at 350–55, 116 S.Ct. 2174.

Tourscher failed to allege any facts that demonstrate that the number of hours he was required to work denied him sufficient time to prepare an appeal to the Pennsylvania courts from his second criminal conviction. To state a viable claim of the denial of meaningful access to the courts, Tourscher was required to plead facts demonstrating that the work he performed in the prison cafeteria interfered with his ability to prosecute his appeal. *See id.* at 351, 116 S.Ct. 2174 (an inmate must demonstrate actual injury, i.e., that state actors hindered his efforts to pursue a legal claim.) Accordingly, we must reject Tourscher's due process claim.

## V

Tourscher asserts that each of his complaints alleged valid claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201–209. He argues that pretrial detainees and convicted prisoners must be paid the minimum wage pursuant to § 206 of the FLSA.[5]

■ The minimum wage provisions of the FLSA, however, apply only to workers who are "employees" within the meaning of the Act. *See* 29 U.S.C. § 206(a).[6] This

---

5. The minimum wage for the period specified in Tourscher's complaints ranged from $4.25 per hour to $5.15 per hour. *See* 29 U.S.C. § 206(a)(1).

6. Section 206(a) reads in relevant part:

Every employer shall pay to each of his *employees* who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the pro-

term must be interpreted in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

Each circuit that has addressed the question has concluded that prisoners producing goods and services used by the prison should not be considered employees under the FLSA. *See Gambetta v. Prison Rehabilitative Industries,* 112 F.3d 1119, 1124–25 (11th Cir.1997); *Danneskjold v. Hausrath,* 82 F.3d 37, 43 (2d Cir.1996); *Reimonenq v. Foti,* 72 F.3d 472, 475 n. 3 (5th Cir.1996); *Henthorn v. Department of Navy,* 29 F.3d 682, 684–87 (D.C.Cir.1994); *McMaster v. Minnesota,* 30 F.3d 976, 980 (8th Cir.1994); *Hale v. Arizona,* 993 F.2d 1387, 1392–98 (9th Cir.1993) (en banc); *Franks v. Oklahoma State Indus.,* 7 F.3d 971, 972 (10th Cir.1993); *Harker v. State Use Indus.,* 990 F.2d 131, 133 (4th Cir. 1993); *Miller v. Dukakis,* 961 F.2d 7, 8–9 (1st Cir.1992); *Vanskike v. Peters,* 974 F.2d 806, 809–10 (7th Cir.1992); *but cf. Watson v. Graves,* 909 F.2d 1549, 1554–55 (5th Cir.1990) (holding the FLSA applicable where the prisoners worked for an outside construction company in competition with other private employers and where this competition tended to undermine compliance with the FLSA).

In *Danneskjold,* the Second Circuit reasoned as follows:

> The relationship is not one of employment; prisoners are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers....
>
> As a result, no Court of Appeals has ever questioned the power of a correctional institution to compel inmates to perform services for the institution without paying the minimum wage. Prisoners may thus be ordered to cook, staff the library, perform janitorial services,

work in the laundry, or carry ou[t] numerous other tasks that serve various institutional missions of the prison, such as recreation, care and maintenance of the facility, or rehabilitation. Such work occupies prisoners' time that might otherwise be filled by mischief; it trains prisoners in the discipline and skills of work; and it is a method of seeing that prisoners bear a cost of their incarceration.

82 F.3d at 42–43.

■ We agree with our sister circuits that prisoners who perform intra-prison work are not entitled to minimum wages under the FLSA.

Tourscher also claims that the minimum wage provision of the FLSA should apply to the work he performed while he was a pretrial detainee. The only circuit which has examined this question held that the FLSA is inapplicable to pretrial detainees working for prison authorities since, like prisoners, they are not employees under the FLSA. *See Villarreal v. Woodham,* 113 F.3d 202, 206–07 (11th Cir.1997).

The Eleventh Circuit reasoned as follows:

> Focusing on the economic reality of the situation in its entirety, we conclude that [a pretrial detainee] is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets Villarreal's needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative 'employer' bears, the more likely it is that the FLSA will govern the employment relationship." Villarreal's situation does not bear any indicia of traditional free-market employment contemplated under the FLSA. Accordingly, we hold that Villarreal and other

duction of goods for commerce, wages at

the following rates .... (emphasis added).

pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

*Id.* at 207 (citations omitted).

■ We agree with this rationale. Tourscher's employment bears no indicia of traditional free-market employment. Therefore, we hold that the minimum wage requirements of the FLSA do not apply to Tourscher or other similarly situated pretrial detainees.

## VI

After reviewing the record and the applicable law, we conclude that Tourscher's remaining contentions are devoid of merit.

## Conclusion

We affirm the dismissal of that portion of the first complaint that alleges that Tourscher was not a duly convicted prisoner after the reversal of his state conviction by the Pennsylvania Superior Court. We hold that Tourscher was a duly convicted prisoner until the automatic stay on the Pennsylvania Superior Court's judgment expired on September 4, 1998, the date the Court of Common Pleas regained jurisdiction following the Pennsylvania Supreme Court's denial of the Commonwealth's petition for allowance of appeal. We vacate the dismissal of that portion of the complaint that alleges that the Prison Officials deprived him of his right as a pretrial detainee not to be subjected to involuntary servitude between September 4, 1997 and September 18, 1997, with instructions that the district court direct the clerk to file Tourscher's complaint and order that it be served on the defendants, and, following appropriate pretrial proceedings, make a determination concerning the matter of the services Tourscher performed and the number of hours he was compelled to work during that period. We affirm the dismissal of Tourscher's second complaint because he failed to allege sufficient facts to demonstrate that he was denied access to the courts. Finally, we hold that he is not entitled to be paid the minimum wage under the FLSA for work he performed as a pretrial detainee or as a duly convicted prisoner.